Argued and submitted September 9, reversed and remanded November 13, 1991, reconsideration denied January 8, petition for review denied February 25, 1992

(312 Or 667)

## STATE OF OREGON,
*Appellant,*

*v.*

## MICHAEL ORVILLE GUNDERSON
and Marieta Gallagher,
*Respondents.*

(89-CF-100, 89-CF-100A; CA A66358)

820 P2d 871

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Richard Lee Barton, Portland, argued the cause for respondent Michael Orville Gunderson. With him on the brief were Daniel Q. O'Dell and Barton & Loennig, Portland.

No appearance by respondent Marieta Gallagher.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

**EDMONDS, J.**

Defendants were jointly indicted for possession of a controlled substance (methamphetamine), ORS 475.992(4); conspiracy to possess a controlled substance (methamphetamine), ORS 475.992(4), ORS 161.450; conspiracy to deliver a controlled substance (methamphetamine), ORS 475.992(1), ORS 161.450; conspiracy to deliver a controlled substance (marijuana), ORS 475.992(2)(a), ORS 161.450; and conspiracy to possess a controlled substance (marijuana). ORS 475.992(4); ORS 161.450. The state appeals a pretrial order allowing defendants' motion to suppress evidence seized pursuant to a search warrant. We reverse.

Defendants filed a motion to suppress and a motion to controvert, contending, among other things, that the affiant's reliance on unlawfully obtained information tainted the entire search warrant. The police used a body wire and overheard a conversation between an informant and defendant Gunderson during a "controlled drug buy" on March 3, 1989. The trial court held that the body wire was illegal, and the state does not argue to the contrary. After excising the portion of the affidavit referring to the unlawfully intercepted conversation, the trial court concluded that the remaining information in the affidavit did not establish probable cause. It also found that defendants controverted the implication in the affidavit that the affiant, rather than the informant, had seen a PVC pipe vent, flush with the ground, in defendants' driveway.

■ The state argues that, after information about the unlawfully intercepted conversation is excised from the affidavit, the remaining information, including affiant's purported observations on March 3, 1989, establishes probable cause. Defendant Gunderson argues that all information in the affidavit regarding the March 3 drug buy is derivative of the illegal body wire and that the remaining portions of the affidavit do not establish probable cause.

■ If a court allows a motion to controvert, it must reexamine the search warrant affidavit and disregard the inaccurate parts. *State v. Morrison/Bartee,* 107 Or App 343, 348, 812 P2d 832, *mod* 108 Or App 766, 816 P2d 1217 (1991). Probable cause means that the information on which the

warrant is based could lead a reasonable person to determine that seizable things will probably be found in the location to be searched. *State v. Anspach,* 298 Or 375, 381, 692 P2d 602 (1984). We construe the affidavit in a realistic and common sense manner. *State v. Villagran,* 294 Or 404, 415, 657 P2d 1223 (1983).

Even if we assume, without deciding, that all information about the March 3 purchase should be excised, the remaining information in the affidavit establishes probable cause. The affidavit contains information from an informant of demonstrated reliability, who had been in defendants' residence several times and had seen drug paraphernalia and weapons. He reported that defendant Gunderson was selling large amounts of controlled substances and that he could purchase methamphetamine or marijuana from him at any time. He also said that he had heard Gunderson boast of supporting himself by drug dealing and of having grown marijuana in his house in the past.

The informant's information was supported by defendants' neighbors, who reported many short-duration visits characteristic of drug dealing, over a period of several months. The affiant had seen numerous people, including people with known drug-related criminal records, make such visits. The affiant checked the power consumption at defendants' residence and shop/barn and found that power usage was unusual, because it increased during the summer months instead of decreasing. The affiant also observed that the ground-level windows of defendants' residence had been covered. In his experience, unusual power usage and covered windows indicate an indoor marijuana growing operation. We conclude that the totality of facts could lead a reasonable person to believe that evidence of a crime would be found at defendants' residence.

Reversed and remanded.